**CF & I STEEL CORPORATION,**
Plaintiff–Appellee,

v.

**R.N. PATTON, Joy C. Carpenter, and James T. McDonald, individually and in their official capacity as members of the Board of Assessment Appeals of the State of Colorado; Board of Assessment Appeals of the State of Colorado; George D. Amaya, James M. Brewer, and Sollie Raso, individually and in their official capacity as members of the Board of County Commissioners, Pueblo County, sitting as the County Board of Equalization, Pueblo County, State of Colorado; Board of County Commissioners of the County of Pueblo, sitting as the Pueblo County Board of Equalization; Michael E. Schuster, individually and in his official capacity as the Pueblo County Assessor, Defendants–Appellants.**

No. 87CA0322.

Colorado Court of Appeals,
Div. IV.

May 26, 1988.

As Modified on Denial of Rehearings
June 23, 1988.

Certiorari Granted (La Duke)
Dec. 19, 1988.

William A. McLain, P.C., William A. McLain, Denver, for plaintiff-appellee.

William David Lytle, Pueblo, Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, James V. Phelps, Pueblo County Atty., Terry A. Hart, Michael M. Como, Pueblo, S. Morris Lubow, Denver, for defendants-appellants.

BABCOCK, Judge.

In this property tax dispute, defendants, various taxing authorities through their representatives and the Pueblo County Assessor, appeal the judgment of the trial court entered upon review of agency action pursuant to § 24–4–106, C.R.S. (1982 Repl. Vol. 10). We affirm in part, reverse in part, and remand with directions.

Plaintiff, CF & I Steel Corporation, (taxpayer) is a corporation that owns and operates a steel mill in Pueblo, Colorado. This appeal concerns the 1984 real property tax assessment of the manufacturing buildings and facilities. Taxpayer does not challenge the assessed land valuations.

When notified of the 1984 assessments, taxpayer protested pursuant to § 39-5-122, C.R.S. (1982 Repl.Vol. 16B). The county assessor affirmed the valuations and assessments. In July 1985, taxpayer appealed this determination to the Pueblo County Board of Equalization. Following a hearing, the Board of Equalization denied taxpayer's petition. Taxpayer then sought review by the state Board of Assessment Appeals (BAA). The BAA also denied taxpayer's petition, and taxpayer appealed to the district court. In November 1986, the trial court issued its order reversing the decision of the BAA and remanding the case to the county assessor to redetermine the 1984 assessments in accordance with the trial court's instructions.

Defendants have stipulated to the facts as set forth by the trial court in its order. Upon review of the administrative records, the trial court found that in recent years the steel mill suffered the adverse effects of a depressed domestic steel industry. In 1983, as a direct result of these distressed economic conditions, much of the steel mill, constituting the real property at issue, was shut down. When the ovens used in the manufacturing process were shut down, the cooling caused the refractories to collapse. For all practical purposes, this permanently terminated steel making at this plant.

Following the shut down, taxpayer reduced its work force by 48%. In 1984, taxpayer prepared a three-year plan for scrapping the idled facilities. The plan was put into effect and the procedures were ongoing at the time of taxpayer's hearing before the Board of Equalization.

The trial court ruled that the 1984 valuations of taxpayer's real and personal property were conducted without an inspection of the plant by the assessor's office. The 1984 valuations were generated from data collected in 1983. The 1983 valuations were based upon modified 1977 base-year valuations.

The trial court determined that the assessor relied exclusively on the "market approach" in assessing taxpayer's real property. The assessor compared the steel mill to the sale value of 24 other commercial and industrial properties in Pueblo County during 1975 and 1976. Based upon this survey, the assessor increased the base-level valuation of the steel mill over 120%. This market approach did not consider any depreciation beyond the 1977 base-year, but did include an 8% reduction in 1982 for poor economic circumstances.

The trial court held that although this method of valuation was allowable for "typical" properties, the steel mill was atypical. The trial court determined from the record that the assessor's office had failed to comprehend the uniqueness of the steel mill, failed to understand that the mill property was irreversibly and irreparably damaged as a result of the shutdown, and failed to consider the "income approach" in its valuations. Accordingly, the trial court concluded that the administrative decisions were unsupported by competent evidence, rendering them arbitrary and capricious.

In its order of remand, the trial court stated that: "The revaluation shall be conducted in accordance with the law by (i) utilizing and documenting all applicable approaches to value; (ii) considering all obsolescence factors affecting CF & I's real and personal property; (iii) considering business profits to determine the economic obsolescence suffered, as required by the income approach to value; (iv) recognizing the value concept of the going concern; and (v) incorporating depreciation factors beyond the base year in the valuation of CF & I's real property."

I.

Defendants first contend that the trial court erred in ruling that the assessor must incorporate depreciation factors beyond the 1977 base year in the reevaluation of the steel mill. We agree.

The property taxation statutes are *in pari materia* and, as such, must be considered together so as to harmonize the legislative scheme as a whole. *BQP Industries v. State Board of Equalization*, 694 P.2d 337 (Colo.App.1984). Section 39-1-103(5)(a), C.R.S. (1987 Cum.Supp.) states in pertinent part:

> "All real and personal property shall be appraised and the actual value thereof for property tax purposes determined by the assessor of the county wherein such property is located. The actual value of such property ... shall be that value determined by appropriate consideration of the cost approach, the market approach, and the income approach to appraisal. The assessor shall consider and document all elements of such approaches that are applicable prior to a determination of actual value...."

Additionally, Colo.Sess.Laws 1983, ch. 429, § 39-1-104(10)(a) at 1494, provides that for the tax year 1984, the 1977 base year level of value shall be utilized for determining actual value of real property.

There is nothing in the legislative scheme to suggest that the assessor must consider depreciation factors beyond the base year when assessing real property. The General Assembly did, however, provide a method for relief from base-year assessments when the post-base year economy will not justify the valuation.

Colo.Sess.Laws 1983, ch. 429, § 39-1-104(11)(b)(I) at 1495 states in relevant part:

> "The provisions of subsections (9), (10) and (10.1) of this section are not intended to prevent the assessor from taking into account, in determining actual value during the intervening years between base years, *any unusual conditions in or related to any real property which would result in an increase or decrease in actual value....* For purposes of this paragraph (b), an unusual condition which could result in an increase or decrease in actual value is limited to the installation of an on-site improvement, the addition to or remodeling of a structure, *a change of use of the land,* the creation of a condominium ownership of real property ... any new regulations restricting or increasing the use of the land, or a combination thereof, any detrimental acts of nature, and any damage due to accident, vandalism, fire, or explosion. When taking into account such unusual conditions which would increase or decrease the actual value of a property, the assessor must relate such changes to the base year level of values as if the conditions had existed at that time." (emphasis added)

Here, the trial court correctly determined that the permanent shut down of the steel mill and the subsequent reduction of 48% of its employees constituted an "unusual condition"; namely, a change in the use of the land, and correctly concluded that the base year level of value of the mill should be redetermined. However, the trial court erred in relying upon this reasoning to order that the assessor *must* take depreciation factors into account when reevaluating the property.

In *BQP Industries v. State Board of Equalization, supra,* we held that the General Assembly intended that depreciation factors be considered beyond the base year for the purposes of assessing *personal* property. Here, the property at issue is undisputedly real property. Further the relief afforded by § 39-1-104(11)(b)(I) is applicable only to real property and not to personal property. Therefore, the relief available to owners and taxpayers of personal property is the consideration of depreciation beyond the base year. By contrast, the owners and taxpayers of real property are afforded statutory relief through operation of § 39-1-104(11)(b)(I). Thus, our holding in *BQP* is inapplicable to this case involving real property.

We conclude that the trial court erred in ruling that the assessor is required to incorporate depreciation factors beyond the 1977 base year in his redetermination of the steel mill assessments.

## II.

Defendants next contend that the trial court erred in determining on review

that the assessor failed to utilize all applicable approaches to value, particularly the income approach. Again, we agree.

The requirement contained in § 39-1-103(5)(a), C.R.S. (1987 Cum.Supp.) that the assessor shall give "appropriate consideration" to each of the three methods of property valuation does not require consideration and documentation of inapplicable approaches. *Montrose Properties, Ltd. v. Board of Assessment Appeals*, 738 P.2d 396 (Colo.App.1987).

Here, the trial court determined that the record contained testimony by the county assessor regarding consideration of the applicability of all three approaches. Therefore, the trial court erred in ruling that the assessor neglected to consider adequately the three statutory approaches to value. For this reason, we do not address defendants' final contention that the trial court erred in ruling that the "business profits rule" does not apply to valuations for purposes of taxation.

That portion of the judgment of the trial court reversing the administrative decisions as arbitrary and capricious for failure to account adequately for unusual conditions in assessing the property at issue here pursuant to Colo.Sess.Laws 1983, ch. 429, § 39-1-104(11)(b)(I) at 1495 is affirmed. The remainder of the trial court's ruling and judgment is reversed and the cause is remanded to the trial court with directions to order the county assessor to redetermine the valuation of taxpayers' property consistent with the views expressed herein.

JONES, J., concurs.

CRISWELL, J., specially concurs.

CRISWELL, Judge, specially concurring:

I concur in the result reached by the majority, which will mean that the assessor shall be required to reassess this property for 1984. I write separately, however, to evidence my possible disagreement with the majority upon two subjects.

I.

The taxpayer's appeal of the 1984 assessment, which is the subject of this appeal, was consolidated by the trial court with a similar appeal of the 1985 assessment of the taxpayer's property. The defendants attempted to appeal the trial court's judgments in both cases. However, we dismissed their appeal of the 1985 assessment case, because that appeal was not filed in a timely fashion. *See Denver v. Board of Assessment Appeals*, 748 P.2d 1306 (Colo. App.1987).

The taxpayer now argues that the trial court judgment in the 1985 assessment case, being final, is res judicata of the issues raised here. Conversely, the defendant argues that that judgment merely constitutes the "law of the case." The majority opinion addresses neither assertion.

While I am of the opinion that the doctrine of res judicata is inapplicable in this case, I am also of the view that the judgment in the 1985 case does not constitute the "law of the case."

The consolidation of the two appeals by the trial court did not result in the merger of those two proceedings into a single proceeding. *Denver v. Board of Assessment Appeals, supra.* Thus, it is my view that nothing we decide here will affect the judgment and decree entered by the trial court in the 1985 assessment case.

II.

Contrary to what some of the language used by the majority might imply, I am of the opinion that an assessor's failure to utilize a particular method of evaluation (*i.e.*, cost, income or market), if unsupported by the record evidence, might be considered to be arbitrary and capricious. In such a case, I would consider that the administrative selection of an appropriate method of evaluation could, indeed, be a proper subject for judicial review.

In this case, the trial court found that all of the testimony, including that of the assessor, established that the *only* appropriate method of evaluation that could be used to take "economic obsolescence" into con-

sideration would be the income approach. Thus, it ordered that the assessor utilize that method of evaluation in his reassessment for 1984.

However, there is, in my view, no need to enter such an order at this point. The assessor has been ordered to engage in a reassessment. If that reassessment results in an evaluation with which the taxpayer agrees, no court shall be required to pass upon the legal appropriateness of the method of evaluation used by him. If the taxpayer disagrees with the result of that reassessment, the appropriateness of the method of evaluation used by the assessor can then be reviewed in any later appeal within the context of the specific facts developed during the course of that reassessment.